**In re Issac MAPSON, Debtor.**

**Michael J. SUERTH, Plaintiff,**

**v.**

**Issac MAPSON, Defendant.**

**Bankruptcy No. 283–00699.**
**Adv. No. 284–0104.**

United States Bankruptcy Court, C.D. Illinois.

Oct. 26, 1988.

Daniel V. Kinsella, Houg, Weatherhead & Kinsella, Chicago, Ill., for plaintiff.

Lawrence E. Johnson, Lawrence E. Johnson & Associates, Champaign, Ill., for defendant.

Kenneth Meeker, Danville, Ill., trustee.

## AMENDED MEMORANDUM, OPINION & ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter comes before the court on a series of motions filed by the plaintiff in this adversary proceeding. The first motion seeks to have this Court reconsider and vacate its earlier order granting the debtor defendant's motion under Bankruptcy Rule 9024 and Federal Rule of Civil Procedure 60(b) vacating a default judgment the court had entered against the debtor in this proceeding. The second and third motions seek sanctions against the debtor and his former attorney for their activities leading up to the entry of default judgment and their actions seeking to have that judgment vacated. A fourth motion

seeks the assessment of interest on sanctions imposed.[1]

The facts leading up to the motions presently before the court are bizarre. The debtor filed a Chapter 7 petition in 1983. In 1984 the plaintiff filed his complaint seeking to have the debt the debtor owed him determined to be nondischargeable. For a variety of reasons, including the unexpected sudden resignation of one of the sitting bankruptcy judges in this district, the matter had not come to trial by the beginning of 1987. The undersigned was assigned by the United States Court of Appeals for the Seventh Circuit as a visiting bankruptcy judge to assist in reducing the backlog confronting the overworked remaining bankruptcy judges in the district.

Trial in the adversary proceeding was set for June 15, 1987 in Danville before the undersigned. The Clerk's office sent counsel for the plaintiff and defendant notice of that trial date. Neither side sought a continuance. However, at the appointed time only the plaintiff's attorney appeared ready for trial. Nobody appeared for the defendant. Attempts by personnel from the Clerk's office to contact the defendant's then attorney, Mr. Lawless, proved fruitless.[2] Since plaintiff was there with his witnesses prepared to prove the allegations in the complaint, a default judgment was subsequently entered against the defendant on July 6, 1987.

Shortly thereafter, Mr. Lawless filed a motion under Bankruptcy Rule 9024 and Rule 60(a) of the Federal Rules of Civil Procedure seeking to vacate the default judgment. Although the motion was filed within ten days after the entry of the default judgment, it did not allege any of the usual Rule 59 grounds such as excusable neglect on the part of defendant's attorney in miscalendaring the trial date or family or professional emergency precluding attendance at trial.[3] Instead, Mr. Lawless cited clerical error as the basis of his motion under Rule 60(a), claiming in an affidavit that the notice he received from the Clerk's office had set the trial for June 26, 1987, not June 15. He attached a document purporting to be a copy of the notice he received.

Since the document attached to the motion was rather clearly a copy of an altered version of the original notice for a June 15 trial date issued by the Clerk as found in the court file and received by plaintiff's attorney, the obvious question was whether the notice had been altered before or after it was received by Mr. Lawless.[4] If the notice had been altered before receipt by Mr. Lawless, presumably by someone in the Clerk's office, the motion would have to be granted on due process grounds for failure to give proper notice of the trial date. If the notice had been altered by Mr. Lawless or someone in his office after he

1. This Court originally issued its opinion in this matter on September 26, 1988. The plaintiff subsequently filed a motion to amend that order, as the Court had not made a finding with regard to plaintiff's motion for sanctions under Bankruptcy Rule 7037, which it had filed with the Court on January 20, 1988. The plaintiff also moved the Court to modify the original order to assess interest on the sanctions imposed. Both of these motions are disposed of in this amended opinion.

2. As indicated subsequently in this opinion, Mr. Lawless has since been replaced by another lawyer as counsel for the debtor.

3. Federal Rule of Civil Procedure Rule 59 applies in proceedings in the bankruptcy court by virtue of Bankruptcy Rule 9023. A Rule 59(e) motion must be brought within 10 days of the entry of judgment and will toll the time for appeal by suspending finality of the judgment. A Rule 60 motion must be brought within one year from the entry of judgment and does not

have this tolling effect. *See Palantine National Bank v. Harrigan (In re Harrigan)* 74 B.R. 224, 228 (N.D.Ill.1987); *Bank of California v. Arthur Andersen & Co.,* 709 F.2d 1174, 1176 (7th Cir. 1983). The Seventh Circuit has adopted a rule that "all substantive motions served within ten days of the entry of a judgment will be treated as based on Rule 59, and therefore as tolling the time for appeal." *Harrigan* at 228–29, quoting *Charles v. Daley,* 799 F.2d 343, 347 (7th Cir. 1986).

4. It is clear even on a cursory examination that the "26" after the word "June" in the part of the notice setting the trial date in the document submitted by Mr. Lawless had been made by a different typewriter than the other numbers in the notice and was not printed at the same level as the rest of the line. This leads to the inevitable conclusion that the original notice had been altered by someone.

received it, the motion could not be granted on the grounds alleged.[5]

Plaintiff strongly opposed the motion to vacate the default judgment, and extensive discovery was had to determine the contents of the trial notice actually received by Mr. Lawless. During the course of that discovery, Mr. Lawless claimed to be unable to locate the actual notice he received from the clerk. The court ordered him to produce the original. At a deposition some ten weeks later, on or about December 7, 1987, Mr. Lawless produced what he said was the original notice he had received.[6] Pursuant to telephonic order of this court, the court reporter took the alleged original notice, placed it in a signed sealed envelope and delivered it to the Clerk for safe-keeping.

On June 7, 1988, this court held a hearing on the motion to vacate. At that hearing, the envelope containing the alleged original notice Mr. Lawless claimed to have received was unsealed by the court and the alleged original was introduced into evidence. Testimony was given by the debtor, Mr. Lawless and Mr. Lawless's secretary with respect to the receipt of the notice and alleged preparation for a June 26 trial date. It appeared from that testimony that Mr. Lawless was out of state on personal business on June 15, 1987. However, absolutely no credible documentary evidence was presented to confirm his claim of receiving a notice setting a June 26 trial date. He produced two letters he claimed he sent to the debtor before June 26 notifying him of a June 26 trial date, but he could produce no evidence as to when those letters were in fact written or whether and when they were mailed. He had no envelopes with postmarks or return receipts. The letters notifying his client of the date for trial allegedly were not sent using any mail procedure such as certified mail requiring the debtor to acknowledge receipt, which seems an incredibly sloppy practice in this emerging era of attorney malpractice. No credible evidence was presented as to when or whether the debtor received any letters from Mr. Lawless regarding the trial. It does not appear that Mr. Lawless actually met with his client regarding the trial in advance of either June 15 or June 26.

By the same token, little weight could be given to the secretary's testimony. Obviously, it was in her economic self-interest to support Mr. Lawless's story. Again, no credible documentary evidence could be produced which would corroborate her version of the receipt of the notice with the alleged June 26th trial date or the mailing and delivery of the letters regarding the trial date. Her testimony was vague at best, and her tone and demeanor led the court to give it little weight. She seemed more interested in defending her boss (and to that extent, her job) than in anything else.

However, the ultimate damning testimony came from Mr. Lawless himself. Mr. Lawless testified that he misplaced the original notice he received from the court, only to find it several months later in a volume of the Illinois Revised Statutes. The alleged original was in pristine condition. The edges were not frayed despite the fact that the plaintiff's attorney demonstrated that the edges of the 8½ inch by 11 inch document would protrude if placed in a 5¾ inch by 9½ inch book. Mr. Lawless sought to explain this away by saying that the book containing the notice had lain on a table or shelf and that nothing had bumped up against the overflowing edges of the notice during the several months it had been in that book.

In answer to this Court's questions, Mr. Lawless testified that he had picked up the notice in question himself from his post office box, and that it had been mailed by the court in a normal four inch by nine ½

5. Obviously, if Mr. Lawless or someone in his office was responsible for the altering of the notice, other implications ensue. These are discussed in the sanctions portion of this opinion.

6. The alleged original received by Mr. Lawless was also a copy of the altered notice. If this was in fact the original notice of trial he received from the court, it would lead to the inevitable conclusion that he did not alter it, and that it was altered by someone else before it was mailed to him.

inch business envelope. He testified that notices from the bankruptcy court always came in business envelopes, and that there was nothing unusual about this notice. His testimony that it is the usual practice of the Clerk's office of this court to send notices in business envelopes simply confirmed the court's knowledge in that regard. Having so testified, he was then unable to explain to the court why the alleged original notice he had produced, which he claimed to have received in an ordinary business envelope and which was a normal eight ½ inch by eleven inch letter-size notice, was in pristine condition and had never been folded.

At this point the court called counsel for the plaintiff and the attorney representing the debtor at this hearing to the bench for a sidebar conversation.[7] The court informed counsel that it was clear that Mr. Lawless had not been telling the truth with respect to the alleged original notice he received, and that, as a result, his credibility had been destroyed and that of his secretary cast in grave doubt. One effect of Mr. Lawless' misrepresentation to the court with respect to the alleged original notice received by his office was that the court could hardly conclude that the notice Mr. Lawless actually received contained a June 26, 1987 trial date. The court gave the debtor's attorney an opportunity to confer with his client in light of the events that had transpired at the hearing.

After talking with the attorney conducting the hearing, the debtor requested that that attorney be allowed to substitute for Mr. Lawless in the bankruptcy case in general and to represent him in the adversary proceeding. That motion was granted. The debtor then orally requested that the default judgment be vacated under Bankruptcy Rule 9024 and Rule 60(b) of the Federal Rules of Civil Procedure.

The gist of this motion was that Mr. Lawless' behavior and/or that of his secretary in apparently seeking to cover up a simple calendaring error and the lengths

that either or both went to in pursuit of that coverup were so extraordinary and contrary to the debtor's interests as to justify relief under Rule 60(b). The court noted that if the original Rule 59 motion which was timely filed had simply alleged a calendaring error, it would have been granted, the default judgment vacated and the trial reset. Therefore, the court granted the motion over the plaintiff's opposition. The plaintiff's motion to reconsider that order and his motions for sanctions are now before the Court.

### DISCUSSION

#### I. Jurisdiction and Procedure

This adversary proceeding arises under 11 U.S.C. § 523. Accordingly, this proceeding arises under the Bankruptcy Code and falls within the bankruptcy jurisdiction of the district court under 28 U.S.C. § 1334(b), which jurisdiction has been delegated by the district court to this court to exercise pursuant to 28 U.S.C. § 157(b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as a matter relating to the dischargeability of a debt, and thus this court will enter a final determination on the pending motions reviewable only by appeal to the district court.

#### II. The Rule 60(b) Motion

■ In determining whether to reconsider its grant of the debtor's motion to vacate the default judgment under Rule 60(b), the court, as it did in granting the motion in the first place, must balance two competing philosophies. One is the idea of finality of judicial decision making underlying Rule 60(b), as "it is necessary that questions that have been fully considered and decided not be subject to open ended reconsideration." 6A J. Moore, J. Desha Lucas & G. Grotheer, Jr., Moore's Federal Practice ¶ 60.02 (2d ed. 1987). The other is the underlying philosophy of the Bankruptcy Code to afford an honest debtor an opportunity for a fresh financial start. *See Brown v. Felsen*, 442 U.S. 127, 128, 99

---

7. Obviously, since Mr. Lawless was to be a witness at the hearing on the motion to vacate and since his credibility was very much at stake, he could not represent the debtor at the hearing. *See Schwan v. Seivers (In re Seivers)* 74 B.R. 981, 984 (Bkrtcy.D.Colo.1987).

S.Ct. 2205, 2207, 60 L.Ed.2d 767 (1979); *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); *Matter of All–Way Services, Inc.*, 73 B.R. 556, 565 (Bkrtcy.E.D.Wis.1987). In the facts and circumstances of the instant proceeding, the latter must outweigh the former.

Additionally, it is this circuit's well-established policy to favor a trial on the merits over a default judgment, as "default judgments should generally be set aside where the default has not been willful." *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873 (7th Cir.1988), quoting *Passarella v. Hilton Int'l Co.*, 810 F.2d 674, 675–76 (7th Cir. 1987); *See also Inryco, Inc. v. Metropolitan Engineering Co., Inc.*, 708 F.2d 1225, 1230 (7th Cir.1983), *cert. denied*, 464 U.S. 937, 104 S.Ct. 347, 78 L.Ed.2d 313 (1983). The simple fact is that due to the shortcoming of his attorney, the debtor has never had his day in court on the question of whether or not this debt should be discharged. His attorney's apparent negligence and his attorney's attempts to cover up that negligence deprived him of that opportunity. If the instant motion is denied, he will never get that opportunity. Instead he will be saddled with the obligation to the plaintiff, and his fresh start will be hindered accordingly.

■ The debtor's motion to vacate here is permissible under either Rule 60(b)(1) or 60(b)(6). It is clear that either Mr. Lawless or his secretary neglected to properly calendar the trial date. While such negligence may not entitle the debtor to relief as of right under the Rule, it is grounds for this court to exercise its discretion to grant relief under the Rule. *Godwin v. Federal Savings and Loan Insurance Corp.*, 806 F.2d 1290 (5th Cir.1987); *Page v. Schweik-*

*er*, 786 F.2d 150 (3rd Cir.1986). Any neglect by the debtor himself, in terms of not contacting his attorney to determine the outcome of the dischargeability complaint is also excusable. A poor consumer debtor such as this debtor can hardly be expected to understand the intricacies of bankruptcy law and procedure. That is why he hired Mr. Lawless. The debtor did not act willfully in allowing a judgment to be entered by default at a trial his lawyer had not notified him was to take place.[8]

The motion was brought within the year provided by the Rule. While the plaintiff makes much of the fact that the motion was not made until more than eleven months had passed, the plaintiff makes no suggestion as to how this delay injured the plaintiff. *See Paris Foods Corp. v. Topakas (In re Juil, Inc.)* 52 B.R. 343 (Bkrtcy.E. D.Pa.1985). The plaintiff knew from early on that the defendant was seeking to vacate the default judgment. There is no suggestion that evidence or witnesses previously available to the plaintiff became unavailable during the eleven month delay.

Finally, the debtor has an answer on file contesting the merits of the dischargeability complaint. Thus he asserts a meritorious defense. He need not prove that defense in the context of this motion. That is for trial. It is enough that he has presented a meritorious defense in his pleadings. *Fidelity Fund, Inc. v. Owsianowski (In re Salem Mortgage Co.)*, 791 F.2d 456 (6th Cir.1986). Accordingly, relief from the default judgment lies under Rule 60(b)(1).

■ If relief does not lie under Rule 60(b)(1), then it certainly lies under Rule 60(b)(6), which provides that relief from the operation of judgment may be had for an extraordinary reason not otherwise specified in Rule 60(b)(1)–(5) which would justify relief.[9] Assuming that Mr. Lawless' con-

---

**8.** In fact, while the court has serious questions about Mr. Lawless' conduct after the judgment was entered, the court has little doubt that the default was originally entered due to Mr. Lawless' negligence, not due to anything willful on the part of Mr. Lawless or his secretary.

**9.** Obviously, if this Court is incorrect in its belief that relief from the default judgment is available to the debtor under Rule 60(b)(1), the

debtor cannot get relief under any of the grounds set out in Rule 60(b)(2)–(5). Thus, in this alternative analysis, the prerequisite to the application of Rule 60(b)(6), unavailability of relief under grounds set out in any other provision of Rule 60(b), is satisfied. *See Godwin v. Fed. Sav. & Loan Ins. Corp.*, 806 F.2d 1290 (5th Cir.1987). Of course, here the debtor is not trying to use Rule 60(b)(6) to get around the one

duct is not excusable, his disloyalty to his client in trying to coverup his own inability to find the original notice he received, his apparent reluctance to admit a simple calendaring error by him or his secretary, and his prolonged insistence on pursuit of a doomed motion are all grounds for relief for his client. The circumstances which gave rise to the Rule 60(b) motion in this matter are extraordinary. *See Margoles v. Johns,* 798 F.2d 1069 (7th Cir.1986), *cert. denied* — U.S. ——, 107 S.Ct. 2482, 96 L.Ed.2d 374 (1987); *Wesco Products Co. v. Alloy Automotive Co.,* 90 B.R. 331 (N.D. Ill.1988). This court has never seen attempts to alter a notice and such blatant misrepresentations with respect to claims of a copy being an original received. It hopes never to see such circumstances again. Clearly, given the disloyalty of his attorney, if the debtor cannot find relief under Rule 60(b)(1), he can find relief under Rule 60(b)(6). See *Lincoln Savings Bank v. Carmelita Development Corp.,* 88 F.R. D. 648 (D.C.P.R.1980); *Williams v. Cal Indus., Int'l. (In re Ireco Indus., Inc.),* 2 B.R. 76 (Bkrtcy.D.Ore.1979).

The plaintiff suggests that the court leave the judgment of nondischargeability in place and leave the debtor to pursue a malpractice action against Mr. Lawless, citing *Brown v. E.W. Bliss Co.,* 72 F.R.D. 198 (D.Md.1976). Such a solution is wholly unrealistic in the facts and circumstances of this matter. The debtor is emerging from bankruptcy. He can hardly afford to fund an attorney malpractice action where the amount in dispute is less than $10,000.

In the context of a dischargeability dispute, Rule 60(b), like other dischargeability statutes and rules, should be construed liberally in favor of a debtor to promote a debtor's fresh start. *See Matter of Cross,* 666 F.2d 873, 880 (5th Cir.1982); *In re Vickers,* 577 F.2d 683, 687 (10th Cir.1978); *Household Finance Corp. v. Danns,* 558 F.2d 114, 116 (2d Cir.1977); *FDIC v. Kirsch,* 65 B.R. 297, 302–03 (Bankr.N.D.Ill. 1986); *In re Levinson,* 58 B.R. 831, 837 (Bankr.N.D.Ill.1986), *aff'd* 831 F.2d 1292

(1987); *In re Marino,* 29 B.R. 797, 798–99 (N.D.Ill.1983). If the plaintiff has a case for nondischargeability, let him prove it. He has not done so to date. It is up to the plaintiff to establish the merits of his non-dischargeability complaint by clear and convincing evidence. *Chase Manhattan Bank v. Williams (In re Williams ),* 85 B.R. 494 (Bkrtcy.N.D.Ill.1988); *Harris Trust & Savings Bank v. Klein,* 83 B.R. 968 (Bkrtcy.N. D.Ill.1988). If the plaintiff cannot satisfy that burden, the debtor deserves and should get a fresh start.

III. Sanctions

■ The plaintiff seeks sanctions against the debtor and Mr. Lawless for all fees and expenses incurred in connection with the entry of the default judgment and the proceedings which have ensued thereafter in connection with the vacation of that default judgment. The sanctions are sought under both Bankruptcy Rules 7037 and 9011 and 28 U.S.C. § 1927.

Bankruptcy Rule 7037 makes Federal Rule of Civil Procedure 37 applicable to these proceedings. The bankruptcy court may impose sanctions pursuant to Rule 37(c) for failure to comply with discovery orders. See *Chanute Production Credit Ass'n v. Olson, (In re Olson )* 61 B.R. 384 (Bankr.D.Kan.1986). Rule 37(c) F.R.Civ.P. provides that "if a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the Court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees."

It is worth noting that Rule 11 of the Federal Rules of Civil Procedure does not apply in bankruptcy cases and proceedings. *See* Federal Rule of Civil Procedure 81(a)(1). Instead the Bankruptcy Rules

year time limit of Rule 60(b)(1). *See Klapprott v. U.S.,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949), *modified* 336 U.S. 942, 69 S.Ct. 384, 93

L.Ed. 1099 (1949); *U.S. v. Baus,* 834 F.2d 1114, 1121–22 (1st Cir.1987); *United States v. Karahalias,* 205 F.2d 331, 333 (2d Cir.1953).

contain a modified version of Rule 11, Bankruptcy Rule 9011, which applies in the context of bankruptcy cases and proceedings. The primary difference between the two rules is that Bankruptcy Rule 9011 excuses an attorney from having to inquire into and sign certain pleadings in a bankruptcy case which are beyond the attorney's control, such as the schedules and the debtor's statement of intentions with respect to the disposition of consumer collateral required by 11 U.S.C. § 521(2). However, in general there is no substantive difference in the context of most pleadings, including the pleadings involved in this matter, between Rule 11 and Bankruptcy Rule 9011. *See Morgan v. Kanak (In re Kanak)*, 85 B.R. 483 (Bkrtcy.N.D.Ill.1988). Thus, for purposes of the instant motion for sanctions, the law developed under Rule 11, particularly in this circuit, is applicable and Rule 11 and Bankruptcy Rule 9011 will be referred to interchangeably.

Rule 11 of the Federal Rules of Civil Procedure places an affirmative duty on an attorney to investigate the facts and the law before signing and submitting any pleading, motion or paper. The investigation must be reasonable in terms of the existing circumstances and facts known at the time that the pleading, motion or paper is submitted. 2A J. Moore, J. Lucas, & G. Grotheer, Jr., Moore's Federal Practice ¶ 11.02[3] (2d ed. 1987). An attorney's signature certifies that there is good ground to support the claims made to the best of his or her knowledge, information and belief. *Helfant v. Louisiana & S. Life Ins. Co.*, 82 F.R.D. 53 (E.D.N.Y.1979). The conduct of an attorney or party is analyzed objectively in view of its "reasonableness under the circumstance." *Ordower v. Feldman*, 826 F.2d 1569, 1573 (7th Cir. 1987), quoting *Indianapolis Colts v. Mayor of Baltimore*, 775 F.2d 177, 181 (7th Cir.1985). *See also In re Chicago Midwest Donut, Inc.*, 82 B.R. 943 (Bkrtcy.N.D.Ill. 1988) (attorneys should only be penalized under Rule 11 where they have failed to maintain minimum standard of professional responsibility).

The language of Rule 11 is mandatory. Sanctions will be imposed against an attorney and/or the client where it appears that a document has been submitted for either an improper purpose or where a competent attorney, after reasonable inquiry, could not form a reasonable belief that the document was well grounded in fact or law. *See Eastway Construction Co. v. City of New York*, 762 F.2d 243 (2d Cir.1985), *cert. denied* —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Chaudhry v. Ksenzowski (Matter of Ksenzowski)*, 56 B.R. 819 (Bkrtcy.E.D.N.Y.1985). The courts of this circuit have repeatedly imposed sanctions for Rule 11 violations to discourage groundless litigation. *See Dreis & Krump Mfg. Co. v. International Ass'n of Machinists*, 802 F.2d 247 (7th Cir.1986); *Thornton v. Wahl*, 787 F.2d 1151 (7th Cir. 1986), *cert. denied* 479 U.S. 851, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986); *In re TCI Ltd.*, 769 F.2d 441 (7th Cir.1985); *Alcan Aluminum Corp. v. Lyntel Products, Inc.*, 656 F.Supp. 1138 (N.D.Ill.1987); *Zick v. Verson Allsteel Press Co.*, 623 F.Supp. 927 (N.D.Ill.1985).

Sanctions are also sought under 28 U.S. C. § 1927, which provides that "any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess cost, expenses, and attorneys' fees incurred because of such conduct." The express purpose of this section is to impose sanctions upon attorneys who needlessly delay ongoing litigation by broadening the "range of increased expenses" which an attorney may be required to personally satisfy. House Conference Report No. 96–1234, 96th Congress 2d Session, reported in 1980 U.S.Code Cong. & Admin.News 2716, 2781 at 2782.

An objective standard of bad faith has been held sufficient to impose sanctions under § 1927. *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985). In a later decision, the Seventh Circuit held that before a court may assess fees under § 1927, the attorney must *intentionally* file or prosecute a claim that lacks a plausible legal or factual basis. *Indianapolis Colts*, 775 F.2d at 182 (emphasis added). Regardless of whether Mr. Lawless intentionally brought this mo-

tion knowing that it lacked factual basis, cases decided in this and other circuits since *Indianapolis Colts* have applied the objective standard of bad faith as discussed in *TCI*. *Chicago Midwest Donut, Inc.*, 82 B.R. at 951 (citations omitted).

The 7th Circuit in *TCI* stated that:

"If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious. To put this a little differently, a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law. Our court has long treated reckless and intentional conduct as similar.... A lawyer's reckless indifference to the law may impose substantial costs on the adverse party. Section 1927 permits a court to insist that the attorney bear the cost of his own lack of care."

*In re TCI, Ltd.*, 769 F.2d at 445.

Applying this standard to the instant motion, it is hard to imagine a situation which cries out for sanctions more than this one. However, that is only true as to the activities of Mr. Lawless. Nothing the debtor has done justifies any alteration of the usual practice under Rule 11 of imposing sanctions against the attorney and not the client. *See Chicago Midwest Donut, Inc.*, *supra.*, 82 B.R. at 950. The debtor is as much a victim of Mr. Lawless' activities as the plaintiff. The simple fact is that there is no evidence that the debtor has done anything wrong in terms of Rule 11. As to 28 U.S.C. § 1927 against the debtor, where a party is represented by an attorney, 28 U.S.C. § 1927 authorizes sanctions only against the attorney. *See Interstate Steel Setters, Inc. v. A.J. Maggio Co. (In re*

*Interstate Steel Setters, Inc.)*, 65 B.R. 312 (Bkrtcy.N.D.Ill.1986).

Sanctions are appropriate against Mr. Lawless under both Rules 7037 and 9011 and § 1927. The notice he claims to have relied on in his motion, the one setting the June 26 trial date, clearly had been altered.[10] Mr. Lawless offered very little evidence to show what inquiry, if any, he made into that alteration beyond a brief call to the Clerk to determine why the default had been entered before filing the motion to vacate the default judgment. As far as appears, he did not check with the clerk's office or even with his own office to try to find out what happened with respect to the alteration before proceeding. Instead he simply filed the motion. It is not surprising that given his lack of inquiry, he could not offer any credible evidence at all at the hearing tending to show that the notice he received contained a June 26 trial date when he received it. A reasonable attorney would not have filed a motion which in effect alleged serious misconduct on the part of the Clerk's office in terms of intentionally sending him a false notice of trial date without first making sure that his office actually received the notice with the false date. The fact that Mr. Lawless could not produce the original notice he received belies any claim of inquiry in this regard.[11]

Mr. Lawless' inability to produce the original notice received has a number of other serious implications. First his failure to admit that inability early on in these proceedings and his misrepresentations with respect to the alleged original he subsequently produced clearly multiplied these proceedings unreasonably and vexatiously and justify the imposition of sanctions under § 1927.[12] Second, and perhaps more

---

**10.** *See* n. 3, *supra.*

**11.** Mr. Lawless in his brief in opposition to sanctions says he had no motive to alter the notice of trial. Sliding over the fact that avoiding the embarrassment of missing the June 15 trial date is a sufficient motive for his actions, it is clear there is no evidence of motive on the part of any one in the Clerk's office to send him a false notice and, indeed, it is hard to imagine any such motive.

**12.** Such misconduct also justifies sanctions under Federal Rules of Civil Procedure 16, applicable to these proceedings by virtue of Bankruptcy Rule 7016. However, since the motion relies on Rules 7037 and 9011 and § 1927, this opinion is confined to those grounds. Relief under Rule 7037 in these circumstances would be identical to the relief sought under Rule 9011 and would be appropriate for the same reasons that relief is appropriate under Rule 9011. Therefore, there is no reason to further lengthen this al-

importantly, the fact that Mr. Lawless failed to produce the actual original he received leads the court to infer that he failed to do so because the original would have indicated that the alteration occurred after Mr. Lawless's office received the notice. Regardless of whether Mr. Lawless or some agent of his altered the notice, the conclusion follows that the motion to vacate the default was filed by Mr. Lawless for an improper purpose, i.e. to cover up negligence by somebody in his office, and thus sanctions are appropriate under Bankruptcy Rule 9011 as well.[13]

■ The only matter left to resolve is the amount of the sanctions to be imposed. Plaintiff has sought attorneys fees in the amount of $14,520 for services rendered in these proceedings from the original abortive trial on June 15, 1987 through the briefing of the instant motions plus reimbursement of costs in the amount of $617.40. Plaintiff also requests a doubling of the fees in light of Mr. Lawless' particularly egregious misbehavior. Lawless complains that the amount sought without the multiplier is about twice the amount involved in the litigation, and therefore the request is per se unreasonable. The short answer to that argument is that Mr. Lawless has no one to blame for that fact but

himself. He or someone in his office missed the trial date. He filed an entirely baseless Rule 60(a) motion without making reasonable inquiry and for an improper purpose. He spun out the proceedings and ran up the plaintiff's attorneys fees and costs with his misrepresentations about the alleged original notice he received. It is only fair that he should pay for what he has caused to be spent by the plaintiff and his attorneys.

The court has reviewed the time records in light of the standards set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).[14] Mr. Lawless was not cooperative. He made this litigation particularly difficult and distasteful for the plaintiff's attorney. Plaintiff's lawyers showed themselves to be competent litigators in these proceedings. They were entirely successful in defeating Mr. Lawless' unfounded motion to vacate. This success in large measure is attributable to the professional manner in which they prepared their pleadings, pursued discovery, and prepared for and participated in the hearing. The normal hourly billing rate of $110 appears to be reasonable in relation to the experience of counsel and the work performed in this case given the

---

ready lengthy opinion with an extended discussion of Rule 7037. Suffice it to say that the failure to produce the actual original notice received as he was ordered to do by the Court and the production of document falsely alleged to be the original notice received after significant delay in response to a discovery request clearly justifies the imposition of sanctions under Rule 7037. *See Chanute Production Credit Ass'n v. Olson,* 61 B.R. 384 (Bankr.D.Kan.1986).

**13.** Of course, the further implication of this inference is that a number of criminal statutes, including 18 U.S.C. § 152, may have been violated by the filing and pursuit of the motion to vacate the default judgment. Ordinarily, this Court would refer the matter to the United States attorney for appropriate inquiry under 18 U.S.C. § 3057. However, since an Assistant United States attorney participated in the hearing on the motion to vacate the default as counsel to the Deputy Clerk who mailed the trial notices, this Court trusts the U.S. Attorney is aware of the matter and is making appropriate inquiry. A copy of this decision will be sent to the Illinois Attorney Registration and Disciplinary Commission.

**14.** The 12 standards to be considered are as follows:
(1) The time and labor required.
(2) The difficulty and novelty of issues involved.
(3) The skill required to properly perform the services.
(4) Whether employment in the case precluded acceptance of other employment opportunities.
(5) The customary fee for the services.
(6) The time constraints imposed by the trustee or the circumstances of the case.
(7) Whether the fee is contingent.
(8) The amounts involved and degree of success.
(9) The experience, reputation and ability of the professional.
(10) The unattractiveness of the case.
(11) The nature and length of the relationship between the professional and the trustee.
(12) The amount of compensation allowed similar professionals in similar careers.

rates charged in either the Chicago or Danville community for similar services. The out-of-pocket expenses of $617.40 are adequately supported by the pleadings and clearly were caused by Mr. Lawless's baseless motion and other activities.

Mr. Weatherhead of the Chicago law firm Weatherhead & Kinsella represented the plaintiff at the hearing originally scheduled in this matter on June 15, 1987. His billing statement of that date reflects 12 hours of travel time from his office in Chicago to Champaign to prepare the plaintiff for the hearing, travel from Champaign to Danville for the hearing, and travel from Danville to Chicago. Mr. Kinsella of the same firm represented the plaintiff in all other matters and also billed for the travel time he was required to spend in this case. The Court finds that the travel time requested is both reasonable and compensable as it clearly arises from Mr. Lawless' needless delay of these proceedings. The Court also finds that the billing records maintained by the law firm of Weatherhead & Kinsella are adequately detailed and reflect services necessarily related to the matter.

However, plaintiff's lawyers cannot be compensated for time spent seeking to vacate the grant of the debtor's rule 60(b) motion. First, Mr. Lawless is being sanctioned for his unreasonable activity in allowing the default to be entered followed by his ill-advised Rule 60(a) motion seeking to vacate the default and his unreasonable and vexatious pursuit of that motion. He had nothing to do with the Rule 60(b) motion. It was made by the debtor's present attorney who succeeded Mr. Lawless. Second, and more importantly, no sanctions lie for the Rule 60(b) motion because the court found it to be meritorious, granted the relief sought, and in this opinion has declined to reconsider that decision. Therefore, there was no Rule 11 or § 1927 violation in connection with that motion. It appears plaintiff's attorneys have included some 7.5 hours of time spent in drafting the motion to reconsider the Rule 60(b) motion in their sanction request. Accordingly, the requested $14,520 in fees should be reduced by $825 (7.5 hours @

$110/hour), leaving sanctions in the amount of $13,695 and costs of $617.40.

The plaintiff incorrectly relies on *Hale v. Harney*, 786 F.2d 688 (5th Cir.1986) to support his request for a doubling of the attorneys' fees awarded. The *Hale* decision is based on Rule 38 of the Rules of Appellate Procedure, which does not apply to the proceeding before this Court. The plaintiff cites no provision in the Bankruptcy Rules or the Judicial Code permitting this court to impose a sanction of double fees. Therefore, plaintiff's award is limited to those fees and costs actually incurred in this matter as specified in its motion for fees and costs.

■ The plaintiff has requested interest on the sanctions awarded under 28 U.S.C. § 1961(a) which provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court". Although § 1961 only mentions district court judgments, it has been held to apply to judgments entered by bankruptcy courts as well. *See*, e.g. *In re Goldblatt Bros., Inc.*, 61 B.R. 459, 466 (Bankr.N.D.Ill.1986). *In re H.P. King, Co., Inc.*, 64 B.R. 487, 491 (Bankr.E.D.N.C.1986). There is no apparent reason why § 1961 should not apply to an award of sanctions which is a form of civil judgment entered on a motion. *See generally* 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.02 (2d ed. 1985). This judgment will order Mr. Lawless to pay the sanctions awarded herein within 30 days of the date this order is docketed without interest. If he fails to pay within such time interest will run as of the order is docketed in accordance with 28 U.S.C. § 1961.

IT IS HEREBY ORDERED that the plaintiff's motion to reconsider its order vacating the earlier default judgment entered against the defendant pursuant to Rule 60(b) is denied.

IT IS FURTHER ORDERED that the plaintiff's motion for sanctions against Mr. Lawless for his conduct in these proceedings is granted and Mr. Lawless is to reimburse the plaintiff for attorneys' fees in-

curred in the amount of $13,695 and costs in the amount of $617.40.

IT IS FURTHER ORDERED that Mr. Lawless pay amounts allowed as sanctions within 30 days from the date this order is docketed without interest.

IT IS FURTHER ORDERED that in the event payment is not made within 30 days interest will run of the sanctions allowed from the date this order is docketed as provided in § 28 U.S.C. § 1961(a).

IT IS FURTHER ORDERED that the plaintiff's motion for sanctions against the debtor, Issac Mapson, is denied.

IT IS FURTHER ORDERED that the Clerk is to transmit a copy of this opinion to the Illinois Attorney Registration and Disciplinary Commission.

IT IS FURTHER ORDERED that the Clerk is to reset this proceeding for trial before the undersigned in Kankakee or Danville and give all parties appropriate notice of that trial.